UNITED STATES of America

v.

**John A. SHORTER, Jr., Appellant.**

No. 85–6211.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 10, 1986.

Decided Jan. 16, 1987.

Plato Cacheris, Appointed by this Court, with whom Larry S. Gondelman, Appointed by this Court, was on the brief for appellant.

Laura Ross Blumenfeld, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Thomas J. Tourish, Jr., and Darryl W. Jackson, Asst. U.S. Attys., were on the brief for appellees.

Before EDWARDS and SILBERMAN, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

McGOWAN, Senior Circuit Judge:

Appellant stands indicted for one felony count of tax evasion and six misdemeanor counts of willful failure to pay federal income taxes. Appellant moved to dismiss count one of the indictment, claiming that the government had impermissibly attempted to avoid the statute of limitations by incorporating twelve separate offenses in one count, resulting in a duplicitous count. The District Court denied appellant's motion. Appellant also filed a notice of intention to place in issue his mental condition by presenting expert testimony that he suffers from a pathological or compulsive gambling disorder. The District Court ordered that the expert testimony proffered by the defense for this purpose not be admitted at trial. The trial court sentenced appellant to forty months incarceration on count one, pursuant to 18 U.S.C. § 4205(b)(2); six months each on counts two through seven to run concurrently

with each other and with count one; and a $10,000 fine. From this judgment, appellant contests the orders of the District Court. For the reasons set forth hereinafter, we affirm.

## I.

By indictment filed on November 1, 1984, appellant was charged with one felony count of willful attempt to evade the payment of income taxes due for the years 1972 through 1983, in violation of 26 U.S.C. § 7201, and with six misdemeanor counts of willful failure to pay income tax for each of the years 1978 through 1983, in violation of 26 U.S.C. § 7203. Appellant moved to dismiss count one of the indictment, claiming that he was being charged with acts barred by the statute of limitations, and that this count was impermissibly duplicitous because it incorporated twelve separate offenses. The District Court denied appellant's motion. *United States v. Shorter,* 608 F.Supp. 871 (D.D.C.1985). To ensure also that any guilty verdict would be unanimous, with respect to at least one affirmative act of evasion and one tax year delinquency, the District Court gave the jury a special unanimity instruction and required the jury to answer special interrogatories. *Shorter,* 608 F.Supp. at 881.

■ Appellant again contends that count one of the indictment—which charges the defendant with twelve separate offenses of tax evasion—was impermissibly duplicitous. Br. of Appellant at 20. " 'Duplicity' is the joining in a single count of two or more distinct and separate offenses." 1 C. Wright, *Federal Practice and Procedure: Criminal* § 142 (2d ed. 1982) (footnote omitted). The District Court set out in careful detail its analysis of this contention, noting consideration of two questions: (1) whether appellant's alleged actions may legitimately be regarded as a single course of conduct and hence as a single offense, and (2) whether appellant would be prejudiced by his prosecution on a single-count basis. *Shorter,* 608 F.Supp. at 875.

Appellant contends that because the offense of tax evasion is time-specific, that is, each offense is tied to a particular year, the charging of tax evasion in a single count with respect to more than one year is impermissibly duplicitous. Br. of Appellant at 20–22. However, as the District Court correctly concluded, "... it is well established that two or more acts, each of which would constitute an offense standing alone and which therefore could be charged as separate counts of an indictment, may instead be charged in a single count if those acts could be characterized as part of a single, continuing scheme." *Shorter,* 608 F.Supp. at 876 (citations omitted); *see also United States v. Mangieri,* 694 F.2d 1270, 1281–82 (D.C.Cir.1982).

■ The few courts that have discussed the issue of duplicity in the context of income tax decisions have supported the conclusion that is permissible to charge conspiracy to evade several years' taxes as one count. *See, e.g., United States v. Baker,* 262 F.Supp. 657, 684 (D.D.C.1966); *Lott v. United States,* 309 F.2d 115, 120–21 (5th Cir.1962), *cert. denied* 371 U.S. 950, 183 S.Ct. 504, 9 L.Ed.2d 498 (1963); *United States v. Haskell,* 327 F.2d 281, 284 (2d Cir.1964), *cert. denied,* 377 U.S. 945, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964). We agree with the District Court's conclusion that tax evasion covering several years may be charged in a single count as a course of conduct in circumstances such as those here where the underlying basis of the indictment is an allegedly consistent, long-term pattern of conduct directed at the evasion of taxes for these years. *Shorter,* 608 F.Supp. at 879; *see also United States v. Boyle,* 338 F.Supp. 1028, 1035–36 (D.D.C.1972); *United States v. Mangieri,* 694 F.2d at 1281–82.

The District Court considered two factors as crucial to the determination of whether a particular conduct may be charged as a continuous offense in a single count: (1) the language and legislative history of the statute, and (2) the nature of the proscribed conduct. *Shorter,* 608 F.Supp. 877; *see also United States v. Morse,* 785 F.2d 771 (9th Cir.1986), *cert.*

*denied,* — U.S. —, 106 S.Ct. 2925, 91 L.Ed.2d 553 (1986); *United States v. UCO Oil Co.,* 546 F.2d 833, 835–37 (9th Cir.1976), *cert. denied,* 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977).

In analyzing the first factor, the District Court concluded that the language and legislative history of the statute does not address directly the question of whether it is proper to charge a continuing scheme to evade taxes for several years. *Shorter,* 608 F.Supp. at 877. The statute makes it a felony for any person to "willfully attempt[ ] in any manner to evade or defeat any tax imposed by this title or the payment thereof...." 26 U.S.C. § 7201. The Supreme Court, however, has construed this language broadly, contemplating acts that would be committed on a multi-year, continuing course of conduct:

> Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation. Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished "in any manner." By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or conceal. *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

Although the language in *Spies* is not conclusive upon the question under consideration here, the District Court's findings are consistent with this language. Under this broad standard, we conclude that count one of the indictment may fairly be read to charge but a single scheme and is therefore not duplicitous.

The second factor, the nature of the proscribed conduct, also supports our ultimate conclusion. We find no basis for appellant's argument that the District Court confused the nature of the proscribed conduct with the nature of the appellant's conduct. Reply Br. of Appellant at 8. The District Court stated in detail the government's charges. *See Shorter,* 608 F.Supp. 877–879. Briefly restated, since at least 1973, appellant has conducted all of his professional and personal business in cash, maintaining no bank accounts, office ledgers, or receipts or disbursement journals. Appellant received compensation in cash, paid his employees in cash, possessed no credit cards, and never acquired attachable assets. In short, appellant maintained what has come to be characterized as a "cash lifestyle." Br. of Government at 36.

Although appellant reported a total income for the twelve years from 1972 through 1983 of $387,438.96 on which there was a tax due, excluding interest and penalties of $134,866.40, appellant made only two $2,500 tax payments during that period. During the same period, the Internal Revenue Service ("IRS") obtained at least nine civil tax judgments against appellant, but because of the cash method of operation, the IRS was never able to collect on any of these judgments.

The District Court concluded, and we agree, that these activities could be regarded as evidencing a continuous course of conduct. In short, as the government argues, each affirmative act of tax evasion was intended to evade payment of all taxes owed, or which appellant expected to owe, at the time of the affirmative act. Br. of Government at 36. Indeed, the same evidence that the government would produce with respect to the single-count indictment covering twelve years "would be admissible to support the first count (in a twelve-count indictment) charging the evasion of taxes due in 1972, and this same evidentiary pattern could and would be repeated eleven more times, that is, with respect to each subsequent count." *Shorter,* 608 F.Supp. at 879.

Finally, appellant argues that language in a number of cases from other Circuits sheds light on the question of whether it is proper to charge a continuing scheme to evade taxes for several years. Br. of Appellant at 22–23 (*citing Costello v. Immigration and Naturalization Service*, 311 F.2d 343 (2d Cir.1962), *rev'd on other grounds*, 376 U.S. 120, 84 S.Ct. 580, 11 L.Ed.2d 559 (1964); *Chanan Din Khan v. Barber*, 147 F.Supp. 771 (N.D.Ca.1957), *aff'd*, 253 F.2d 547, 9th Cir.1958) *cert. denied*, 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1364 (1958)). Again, we agree with the findings of the District Court that none of the cases cited by appellant are conclusive or even persuasive. Two of the decisions cited do not help appellant because the courts were construing immigration laws and not tax laws, and because of the different rationale on which the cases were decided. *See Shorter*, 608 F.Supp. at 875 n. 6; Br. of Appellant at 20.

Appellant's reliance upon several other cases is similarly mistaken. *United States v. Smith*, 335 F.2d 898, 901 (7th Cir.1964), *cert. denied*, 379 U.S. 989, 85 S.Ct. 700, 13 L.Ed.2d 609 (1965), *Norwitt v. United States*, 195 F.2d 127 (9th Cir.1952), *cert. denied*, 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed.2d 635 (1952), and *United States v. Johnson*, 123 F.2d 111 (7th Cir.1941), *rev'd*, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943) upheld decisions to charge evasion in as many counts as there were years. These cases do not stand for the proposition that "an indictment which charges tax evasion for more than one year is impermissibly duplicitous." *Shorter*, 608 F.Supp. at 876.

■ For these reasons, we affirm the District Court's finding that tax evasion covering several years may be charged in a single count as a course of conduct in circumstances such as these where the underlying basis of the indictment is an allegedly consistent, long-term pattern of conduct directed at the evasion of taxes for these years.[1]

## II.

■ Appellant contends next that the statements he made to the IRS agents denying that he had any bank accounts were technically true, and therefore could not be relied upon by the jury as an affirmative act of tax evasion. Br. of Appellant at 28–29. Appellant argues that the evidence on these statements is insufficient to support a conviction. *Id.* We find no merit to this argument as the evidence was clearly sufficient to support a jury's finding that these and other statements to the agents constituted an affirmative act of evasion. *See, e.g., Spies v. United States*, 317 U.S. at 499, 63 S.Ct. at 368 (discussing the broad scope of the affirmative act requirement); *see also United States v. Calles*, 482 F.2d 1155, 1158–60 (5th Cir.1973) (defendant held assets in the names of others and denial of ownership was held to be a false statement); *United States v. Newman*, 468 F.2d 791, 794 (defendant held income generating assets in wife's name and denial of income was a false statement within the meaning of the statute), *cert. denied*, 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).

## III.

Pursuant to Fed.R.Crim.P. 12.2(b), appellant also filed a notice of intention to place in issue his mental condition by presenting expert evidence that he suffers from a pathological or compulsive gambling disorder. Appellant claimed that this expert

---

1. The District Court correctly noted also that in determining whether fairness requires dismissal of an indictment which includes in one count what could be several independent charges, the Court must measure that indictment against the purposes of the prohibition against duplicity. *Shorter*, 608 F.Supp. at 879. These purposes include generally: (1) the prevention of double jeopardy, (2) an assurance of adequate notice to the defendant, (3) the provision of a basis for appropriate sentencing, and (4) the danger that a conviction was produced by a verdict that may not have been unanimous as to any one of the crimes charged. *Id.; see United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir.1981). The District Court held that all four purposes were met here. We agree.

testimony would tend to negate willfulness—an essential element of both the tax evasion and failure to pay counts. *United States v. Shorter,* 618 F.Supp. 255, 256 (D.D.C.1985); *see also United States v. Bishop,* 412 U.S. 346, 359–61, 93 S.Ct. 2008, 2016–17, 36 L.Ed.2d 941 (1973). Briefly stated, appellant contended before the District Court that expert testimony would show that he suffered from a disorder that compelled him to expend nearly all of his available financial resources on gambling, leaving him with no funds to meet tax obligations. Appellant argued that this compulsion, rather than a willful intent to evade taxes, explained the conduct forming the basis for the indictment. Br. of Appellant at 11.

The District Court ordered that the expert testimony proffered by the defense not be admitted at trial. Appellant does not challenge on appeal the District Court's exclusion of the proffered expert testimony that compulsive gambling negated the element of willfulness because it rendered the appellant unable to control his behavior. *See* Br. of Appellant at 9–10. Rather, appellant now argues that the District Court erred in excluding the proffered expert testimony to explain that appellant's cash lifestyle is characteristic of compulsive gamblers—a recognized mental disorder—and therefore not an affirmative act of tax evasion or indicative of a knowing and voluntary violation of the tax laws. Br. of Appellant at 11. As the District Court noted, this closely related theory attempts to explain that the experts' familiarity with the personal habits of compulsive gamblers would help the trier of fact assess the government's claim that appellant's lifestyle is evidence of an intent to willfully evade and willfully fail to pay taxes. *Shorter,* 618 F.Supp. at 261 n. 14.

■■■■ The District Court concluded that there was no compelling indication that appellant's gambling activities and their impact on his financial habits require the testimony of experts, as opposed to lay witnesses familiar with the appellant's activities. *Shorter,* 618 F.Supp. at 261 n. 14.

We agree with this ruling that the proffered expert testimony was properly excluded for this limited purpose. When the specialized knowledge of an expert is unnecessary to a jury's assessment of the salient factual issues, expert testimony will normally be excluded. *See, e.g., United States v. Navarro-Varelas,* 541 F.2d 1331, 1334 (9th Cir.1976), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977).

Appellant contends that the District Court utilized an incorrect standard for determining the admissibility of the proffered testimony, thereby depriving appellant of his right present his defense. Br. of Appellant at 13. We discuss next the District Court's analysis on this issue.

■■■■ Expert testimony is admissible when relevant under Fed.R.Evid. 702. The issue of relevance is the preliminary question of law to be decided by the court. *Shorter,* 618 F.Supp. 257; *see also United States v. Torniero,* 735 F.2d 725, 730 (2d Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985). A court possesses broad discretion when ruling on questions of relevance. *See, e.g., Salem v. United States Lines,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *United States v. Torniero,* 735 F.2d at 730. Even though relevant, evidence may be excluded by the trial court "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. *See United States v. Roark,* 753 F.2d 991, 994 (11th Cir.1985).

In *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), this Court set forth the standard by which this and other Circuits have analyzed questions of admissibility of expert testimony based on new methods of scientific measurement. *See, e.g., United States v. McDaniel,* 538 F.2d 408, 412–13 (D.C.Cir.1976) (voice print spectrography); *United States v. Lewellyn,* 723 F.2d 615, 619 (8th Cir.1983) (compulsive gambling), *United States v. Stifel,* 433 F.2d 431, 438

(6th Cir.1970) (neutron activation analysis), *cert. denied,* 401 U.S. 994, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971). *See also* 3 Weinstein's Evidence ¶ 702[03] at 702–15 (1982). *Frye* is still the law in this Circuit.

The *Frye* standard for determining whether a generic class of scientific evidence is to be admitted at trial requires that the theory from which the deduction is made "be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Frye, supra,* at 1014; *see also United States v. Addison,* 498 F.2d 741, 743 (D.C.Cir.1974). The requirement of general acceptance in the relevant scientific community assures that those most qualified to assess the general validity and reliability of a scientific method will have the determinative voice. *United States v. Addison, supra,* at 744.

As the record and the Court's opinion reveal, the District Court focused on a three part test of the relevancy of expert testimony of pathological gambling. *Shorter,* 618 F.Supp. at 257. The District Court concluded that the testimony would be admitted if defendant were able to establish "(1) that a disorder known as 'pathological gambling' is recognized by the relevant community of experts; (2) that experts generally accept a causal link between pathological gambling and the failure to pay taxes; and (3) that the facts are sufficient to create a jury question as to whether the particular defendant suffers from a pathological gambling disorder." *Id.* After considering the evidence, the District Court made the following determinations with respect to the three part test mandated by *Frye.*

**■ First.** As a preliminary matter, the District Court correctly concluded that, with regard to the pathological gambling disorder, the relevant scientific community is the mental health community comprised of psychologists and psychiatrists. *Shorter,* 618 F.Supp. at 257; *see also United States v. Lewellyn, supra,* at 619. The District Court then concluded, under the first prong of the *Frye* test, that the disorder has achieved general acceptance by mental health professionals and may be "recognized" as a disorder by the courts.

**Second.** Under *Frye,* the pathological gambling disorder must be relevant to one or more elements of the charged offense, in this case to the elements of tax evasion and willful failure to pay taxes. Appellant contended before the District Court that his compulsion for pathological gambling negated the element of willfulness required to convict for tax evasion or willful failure to pay. *Shorter,* 618 F.Supp. at 258.

A number of Circuits have concluded that a link between pathological gambling and criminal intent is not sufficiently accepted by mental health professionals to sustain the relevance of the disorder with respect to an insanity defense. *See, e.g., United States v. Gould,* 741 F.2d 45, 52 (4th Cir.1984) (robbery); *United States v. Torniero, supra,* at 732–34 (interstate transport of stolen goods); *United States v. Lewellyn, supra* at 619 (embezzlement). Certainly, the issue in an insanity case— that of a lack of substantial capacity to appreciate the wrongfulness of conduct or the requirements of the law—differs to some degree in theory from the issue of willfulness. *Shorter,* 618 F.Supp. at 258–59. Nevertheless, as the District Court noted, this Court has determined that the underlying question in such cases is whether the defendant had the mental state that must be proved as to all defendants. *See United States v. Brawner,* 471 F.2d 969 (D.C.Cir.1972). Similarly, in this case, the issue is one of willfulness and specific intent.

The District Court did not rely solely on these appellate precedents. The Court also heard substantial testimony on whether experts generally accept a hypothesis about compulsive gambling that would tend to prove or disprove willfulness. *Shorter,* 681 F.Supp. at 259–60. Based on the testimony of defense and government experts, the District Court concluded that there is no general acceptance among the experts in the relevant scientific community that there is a link between pathological gam-

bling and the failure to pay taxes. *Shorter*, 618 F.Supp. at 260–61.

We are well aware that on appeal, appellant is not contesting the District Court's exclusion of the proffered expert testimony that the compulsion to gamble in and of itself negates willfulness. Br. of Appellant at 11 n. 11. Rather, rebuffed on his principal claim—the claim to which the District Court properly applied the three part *Frye* test—appellant now contends in a subsidiary claim that such expert testimony was admissible to rebut the government allegation that appellant's maintenance of a cash lifestyle was an affirmative act of evasion, rather than a symptom of his underlying pathological gambling disorder. See *Br.* of Appellant at 11. As the District Court recognized, however, this claim is "closely related" to appellant's principal claim that pathological gamblers are unable to pay their taxes. *Shorter*, 618 F.Supp. 258 n. 7, 261 n. 14.

██ Appellant's proffer of expert testimony regarding the characteristics of pathological gamblers fails the second prong of the *Frye* test. *See* Br. of Government at 29. Appellant's assertion that none of the government experts disputed the testimony of the defense experts that a cash lifestyle are common traits of pathological gamblers is without support in the record. Indeed, there was no clear agreement among the defense experts that a cash lifestyle, financial mismanagement, and the relinquishment of control over financial affairs are clinically accepted characteristics of compulsive gambling.

Appellant contends that this Court's test mandated by *Frye* does not apply to the proffered testiomny here because this testimony related solely to the "uncontroverted characteristics of compulsive gamblers and not to novel scientific evidence such as polygraph tests." Br. of Appellant at 14 n. 12; Reply Br. of Appellant at 4. However, as we have just concluded, there was little agreement among the experts that cash lifestyle, financial mismanagement, and relinquishment of financial control were indeed "characteristics" of compulsive gam-

bling accepted by the relevant mental health community. ·

In addition, as described earlier, even if appellant's proffered expert testimony met the three-part *Frye* test, the testimony was not admissible because there was no compelling indication suggesting that appellant's "gambling activities and their impact on his financial habits require the testimony of experts, as opposed to lay witnesses familiar with the [appellant's] activities." *See Shorter*, 618 F.Supp. at 261 n. 14; *see also United States v. Navarro-Varelas*, 541 F.2d at 1334. It is well established that when knowledge of an expert is unnecessary to a jury's assessment of the salient factual issues, expert testimony will normally be excluded. *Shorter*, 618 F.Supp. at 261 n. 14. *See, e.g., United States v. Brown*, 540 F.2d 1048, 1054 (10th Cir.1976), *cert. denied*, 429 U.S. 1100, 97 S.Ct. 1122, 51 L.Ed.2d 549 (1977); *United States v. Buchbinder*, 614 F.Supp. 1561, 1568 (N.D. Ill.1985). We conclude that the District Court's careful determination that the proffered expert testimony was cumulative and unnecessary did not constitute an abuse of discretion. *See, e.g., United States v. Johnson*, 527 F.2d 1381, 1384 (D.C.Cir. 1976).

Appellant next argues, for the first time on appeal, that the expert testimony would give meaning to the appellant's conduct as a product of his compulsion, and not to any criminal intent. Br. of Appellant at 16; Reply Br. of Appellant at 6. Appellant relies on cases which suggest that expert testimony about the *modus operandi* of various offenses have been properly admitted as of appreciable help to the layperson jury. Br. of Appellant at 15–16. We do not rule on the general proposition in these cases or their application to this case. This use of expert testimony was not proffered below and therefore is not reviewable here.

██ Finally, appellant contends that the exclusion of the proffered expert testimony infringed upon the appellant's due process rights to present a defense. Br. of Appellant at 19. Appellant's claim is in error. The District Court did not deny appellant a right to present a defense. *See e.g., Unit-*

*ed States v. Davis,* 772 F.2d 1339, 1347–48 (7th Cir.1985), *cert. denied,* ── U.S. ──, 106 S.Ct. 603, 88 L.Ed.2d 581 (1985). Rather, it ruled that the proffered expert testimony was irrelevant and unnecessary. The District Court was careful to note that its ruling should not be interpreted as precluding the appellant, "through lay testimony, including his own, to seek to persuade the jury regarding his gambling propensities related to his inability to pay his taxes when they were due." *Shorter,* 618 F.Supp. at 261 n. 16.

## IV.

For the foregoing reasons, the decision of the District Court is, in all respects,

*Affirmed.*